IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


DEBBIE DOLLINS                                                                          PLAINTIFF


v.                                     NO. 3:14-cv-00164 JTK


CAROLYN W. COLVIN, Acting Commissioner                                   DEFENDANT
of the Social Security Administration


MEMORANDUM OPINION AND ORDER

Plaintiff Debbie Dollins ("Dollins") began the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Dollins maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] Dollins' primarily reason for so maintaining is that her residual functional capacity was not properly assessed. Specifically, Dollins maintains that the ALJ did not incorporated all of the opinions of two consultative examiners into the assessment of Dollins' residual functional capacity.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by "at least some" medical evidence. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010). [quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)]. The ALJ may discount, or even disregard, the opinion of a medical expert if the opinion is inconsistent with the record as a whole. See Rogers v. Astrue, 479 Fed.Appx. 22 (8th Cir. 2012) [citing Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001)].

The ALJ found that Dollins has severe impairments in the form of a "mild back/spine disorder, chronic obstructive pulmonary disorder …, cardiomyopathy, [h]epatitis C, [an] anxiety/post traumatic stress disorder …, and substance abuse addiction in remission." See Transcript at 13. The ALJ assessed Dollins' residual functional capacity and found that she is capable of performing light work with the following limitations:

> … she is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling; she must avoid concentrations of dust, fumes, gases, odors, smoke, poor ventilation and/or other airborne irritants and must avoid hazards such as moving machinery and unprotected heights. Non-exertionally, she is able to understand, retain, and carry out simple instructions, make simple work-related decisions, perform work where the complexity of tasks is learned and performed by rote, with few variables, and little judgment and few, if any, workplace changes. She can perform work where interpersonal contact is incidental to the work performed and where supervision is simple, direct and concrete.

See Transcript at 15. In making the foregoing findings, the ALJ incorporate some, but not all, of the opinions offered by Dr. Dennis Vowell, Psy.D., ("Vowell"), and Dr. Sudhir Kumar, M.D., ("Kumar"), two consultative examiners.

Substantial evidence on the record as a whole supports the ALJ's assessment of Dollins' residual functional capacity. The ALJ adequately considered the medical evidence and "at least some" medical evidence supports the assessment. The ALJ's failure to incorporate all of Vowell and Kumar's opinions into the assessment is not reversible error. The Court so finds because their opinions that were disregarded by the ALJ are either inconclusive or otherwise inconsistent with the record as a whole. With respect to the non-medical evidence, the ALJ's evaluation of it is one of the acceptable evaluations permitted by the record.

The medical evidence reflects that Dollins was seen by Dr. Mack Shotts, M.D., ("Shotts") at the Paragould Doctor's Clinic in excess of twenty times between July of 2010 and September of 2012. See Transcript at 301-304, 308-311, 312-315, 317-320, 322-324, 325-328, 331-333, 335-338, 339-341, 342-344, 345-348, 350-352, 353-355, 357-360, 367-370, 399-403, 406-408, 558-561, 597-600, 678-681, 688-690, 735-738, 740-744, 777-780.[2] He repeatedly noted her history of hepatitis C and heart disease and her complaints of, inter alia, respiratory difficulties; pain and stiffness, primarily in her chest and back; and depression and anxiety. He repeatedly prescribed medication for her complaints.

---

[2] The record contains numerous duplications. For instance, Shotts' January 31, 2011, progress note appears in the record three times. See Transcript at 317-320, 389-392, 485-488.

The ALJ noted Shotts' findings and observations, see Transcript at 15, and appears to have considered them in assessing Dollins' residual functional capacity. It is difficult to determine what weight the ALJ gave them, but there is no evidence she gave them inappropriate weight. The findings and observations are consistent with the ALJ's assessment of Dollins' residual functional capacity, i.e., they are consistent with the finding that she can perform a reduced range of light work. It is true that Shotts' diagnosed chest and back pain, acute bronchitis, and depression, but his findings were largely unremarkable. Time and again, Shotts noted that, inter alia, Dollins appeared in no acute distress; had a regular heart rhythm; had a full range of motion in all her joints; and had a normal mood, affect, attention span, and concentration. He noted on a number of occasions that her pain was controlled by medication, and he frequently encouraged her to stop smoking. In short, Shotts' findings and observations do not suggest that Dollins has greater work-related limitations than those found by the ALJ.

Shotts never identified any work-related limitations caused by Dollins' impairments, and it appears that he was never asked to do so. Dollins relies upon Pate-Fires v. Astrue, 564 F.3d 935 (8th Cir. 2009), and maintains it was therefore error for the ALJ to observe that "there is no evidence of any health care provider restricting [Dollins] from performing all work-related activities." See Transcript at 18. Accepting that the ALJ's observation is error, it is not reversible error. The ALJ gave other reasons for making the assessment she did of Dollins' residual functional capacity, and substantial evidence on the record as a whole supports those reasons.

Dollins was seen at the Arkansas Methodist Medical Center ("Arkansas Methodist") on at least two occasions complaining of chest pain and difficulty breathing. See Transcript at 292-298, 632-655. Testing revealed cardiomegaly and "chronic appearing changes in [her] lungs," see Transcript at 298, but a chest x-ray at her second visit produced no remarkable results. She was diagnosed with, inter alia, chronic obstructive pulmonary disorder "exacerbation with bronchospasm," chronic smoking, and hepatitis C. See Transcript at 295. A history of poly substance abuse was also noted. See Transcript at 295. Medication was prescribed, and she was encouraged to stop smoking.

Dollins was seen at Cardiology Associates of NEA ("Cardiology Associates") on at least two occasions for her complaints of chest pain, shortness of breath, and palpitations. See Transcript at 706-707, 708-710, 713-721. Testing produced largely unremarkable results, although some heart murmurs were noted. See Transcript at 720. She was diagnosed with chest pain and endocarditis and prescribed medication.

Dollins was also seen at St. Bernard's Medical Center ("St. Bernard's") for her complaints of chest pain. See Transcript at 613-621. Testing produced unremarkable results, and she was diagnosed with non-cardiac chest pain.

The ALJ noted the findings and observations made by the medical professionals at Arkansas Methodist, Cardiology Associates, and St. Bernard's, see Transcript at 16, and appears to have considered the findings and observations in assessing Dollins' residual functional capacity. It is difficult to determine what weight the ALJ gave the findings and observations, but there is no evidence she gave them inappropriate weight. The findings

and observations are consistent with the ALJ's assessment of Dollins' residual functional capacity. For instance, testing by Cardiology Associates produced largely unremarkable results as only heart murmurs were noted. The findings and observations do not suggest that Dollins has greater work-related limitations than those found by the ALJ.

In September of 2011, Vowell saw Dollins for a consultative mental diagnostic evaluation and an evaluation of Dollins' adaptive functioning. See Transcript at 433-437. He diagnosed a post-traumatic stress disorder and assigned her a Global Assessment of Functioning score of between fifty and sixty. With respect to the effects of her post-traumatic stress disorder on her adaptive functioning, he opined the following:

> A. How do mental impairments interfere with this person's day to day adaptive functioning?
>
> Claimant is capable of driving familiar and unfamiliar routes. She seldom goes shopping alone. She is capable of managing her own finances. She can complete basic ADL's and household chores but takes frequent breaks.
>
> B. Capacity to communicate and interact in a socially adequate manner?
>
> Claimant appeared capable of adequate and socially appropriate communication and interaction in today's session.
>
> C. Capacity to cope with the typical mental/cognitive demands of basic work-like tasks?
>
> The claimant appeared to sustain a reasonable degree of cognitive efficiency and was able to track and respond to various kinds of questions and tasks without remarkable slowing or distractibility. However, in situations of mild to moderate stress it is difficulty to predict her ability to cope efficiently.
> D. Ability to attend and sustain concentration on basic tasks?

> As noted in the findings of the mental status exam, the claimant generally displayed mild to moderate impairments in her ability to respond adequately to basic assessment of attention and concentration capacity.
>
> E. <u>Capacity to sustain persistence in completing tasks</u>?
>
> Persistence appeared adequate throughout the session.
>
> F. <u>Capacity to complete work-like tasks within an acceptable time frame</u>?
>
> The claimant did not display remarkable psychomotor slowing. In terms of mental status type tasks, capacity to perform within a basically acceptable time frame was demonstrated. The mild to moderate limitations in this area would be likely associated with increased maladaptive reactions to trauma rather than ongoing cognitive capacity issue.

<u>See</u> Transcript at 436-437.

The ALJ adopted Vowell's diagnosis of post-traumatic stress disorder and found at step two of the sequential evaluation process that the disorder is a severe impairment. <u>See</u> Transcript at 13. The ALJ acknowledged Vowell's opinions in assessing Dollins' residual functional capacity, <u>see</u> Transcript at 16, and appears to have incorporated some of Vowell's opinions into the assessment as he found she is limited to unskilled work, <u>see</u> Transcript at 15.

Dollins challenges the ALJ's failure to incorporate one of Vowell's opinion into the assessment of Dollins' residual functional capacity, <u>i.e.</u>, Vowell's opinion that in situations of mild to moderate stress, it is difficult to predict Dollins' ability to cope efficiently with the typical mental/cognitive demands of basis work-like tasks. The ALJ's failure to incorporate the opinion is not error. Vowell did not state that Dollins has a

limited ability to cope with mild to moderate stress. Instead, he simply noted that it is difficult to predict how she will react when faced with such stress. At best, the opinion is inconclusive, and the ALJ could disregard it. Moreover, Vowell never identified any work-related limitations, and his opinion does not suggest that Dollins has greater work-related limitations than those found by the ALJ.

In October of 2011, Kumar saw Dollins for a consultative physical examination. See Transcript at 462-471. He diagnosed chronic obstructive pulmonary disorder, low back pain, a history of hepatitis C, and a history of depression. He observed that she had a normal range of motion in her extremities and cervical and lumbar spines, although an x-ray of her lumbar spine revealed mild degenerative joint disease. He observed that although she had difficulty walking a straight line, she had negative straight leg raises, had a normal gait, could stand/walk without an assistive device, could walk on her heels and toes, and could squat/arise from a squatting position. He also observed that she could hold a pen and write, touch her fingertips to her palms, could oppose thumb to fingers, and could pick up a coin. He opined, though, that she has a moderate limitation in her ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak.

The ALJ adopted Kumar's diagnosis of chronic obstructive pulmonary disorder, a mild back/spine disorder, and hepatitis C and found at step two that the impairments are severe. See Transcript at 13. The ALJ acknowledged Kumar's opinions in assessing Dollins' residual functional capacity, see Transcript at 16, and appears to have incorporated some of Kumar's opinions into the assessment as Kumar found that Dollins is limited to light

work, see Transcript at 15.

Dollins challenges the ALJ's failure to incorporate one of Kumar's opinion into the assessment of Dollins' residual functional capacity, i.e., Kumar's opinion that Dollins has a moderate limitation in her ability to walk, stand, sit, lift, carry, handle, finger, see, hear, or speak. The ALJ's failure to incorporate the opinion is not error as the opinion is not consistent with Kumar's findings and observations. As the Court noted, Kumar found that Dollins had a normal range of motion in her extremities and cervical and lumbar spines, mild degenerative joint disease, and normal limb function and grip strength. In addition, he appears to have made no findings or observations about her ability to see, hear, or speak. Because the aforementioned opinion is not consistent with his findings and observations, the ALJ could disregard the opinion.

In October of 2011, Dr. Winston Brown, M.D., ("Brown") reviewed Dollins' medical records and offered an assessment of her mental residual functional capacity. See Transcript at 442-444. He opined that she is capable of performing simple, repetitive, routine tasks and can perform work where "interpersonal contact is incidental to work performed, …; complexity of tasks is learned and performed by rote, few variables, little judgment; [and] supervision required is simple, direct, and concrete (unskilled)." See Transcript at 444.

In October of 2011, Dr. David Hicks, M.D., ("Hicks") reviewed Dollins' medical records and offered an assessment of her physical residual functional capacity. See Transcript at 567-574. He opined that she is capable of light work with additional

environmental limitations such as avoiding fumes, odors, dust, and gases.

The ALJ acknowledged Brown and Hicks' findings and conclusions, see Transcript at 16-17, and incorporated them into the assessment of Dollins' residual functional capacity, see Transcript at 15. Although their opinions are not entitled to great weight, their opinions are entitled to some weight. See Anderson v. Heckler, 738 F.2d 959 (8th Cir. 1984) (consulting physician's opinion given limited weight). There is no evidence the ALJ gave their findings and conclusions inappropriate weight, and their findings and conclusions are consistent with the ALJ's finding that Dollins can perform a reduced range of unskilled, light work.

The ALJ additionally considered the non-medical evidence in assessing Dollins' residual functional capacity and did so in accordance with the factors set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). The ALJ found that although Dollins experiences some pain, she does not experience pain to the severity she alleges. See Transcript at 17-19.

Substantial evidence on the record as a whole supports the ALJ's evaluation of the non-medical evidence. Although the ALJ's analysis was not exhaustive, it was adequate. The ALJ considered such things as Dollins's daily activities, see Transcript at 18; her largely conservative medications, see Transcript at 17; and her continued use of tobacco despite her frequent complaints of chest pain and difficulty breathing, see Transcript at 18. In short, the ALJ's evaluation of the evidence is one of the acceptable evaluations permitted by the record, and she could find that Dollins does not experience pain to the

severity she alleges.

Dollins offers another reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Dollins maintains that a flawed assessment of her residual functional capacity was used as a basis for the ALJ's hypothetical question to a vocational expert. The Court cannot agree. Substantial evidence on the record as a whole supports the ALJ's assessment of Dollins' residual functional capacity, and the ALJ used that assessment in crafting the question. See Transcript at 16-19.

Dollins last maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole because the record was not fully developed. Dollins maintains that the ALJ should have "more fully developed the record regarding the severity and effects of Dollins' multiple impairments." See Document 13 at 17.

The ALJ has an obligation to fully develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). The claimant bears a "heavy burden" in showing that the ALJ failed to satisfy the obligation. See Combs v. Astrue, 243 Fed.Appx. 200, 204 (8th Cir. 2007). The claimant must show "both a failure to develop necessary evidence and unfairness or prejudice from that failure." See Id. [citing Haley v. Massanari, 258 F.3d 742, 749-750 (8th Cir. 2001)].

The Court has reviewed the record and finds that Dollins has failed to satisfy her heavy burden in showing the ALJ failed to fully develop the record. It contains adequate evidence for the ALJ to have made a fair decision, and Dollins has failed to specifically identify what evidence the ALJ failed to consider.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Dollins' complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 1st day of <u>June</u>, 2015.

_____
UNITED STATES MAGISTRATE JUDGE